IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUDY RANSOM WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-309-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Judy Ransom Washington seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

### Background

Plaintiff alleges that she is disabled as a result of a variety of ailments, including "mental, depression, bipolar." Dkt. No. 19-6 at 151. After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge. That hearing was held on October 18, 2010. At the time of the hearing, Plaintiff was 37 years old. She has a limited education and appears to have completed the seventh or eighth grade. Plaintiff has no past work experience. Plaintiff has not engaged in substantial gainful activity since November 13, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered severe impairments from organic mental disorder, schizoaffective disorder, depression, anxiety, personality disorder, and substance addiction disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: only simple 1-2 step unskilled work under SSR 85-15, further limited by no teamwork, no contact with the public, and only minimum supervision where the supervisor shows her how to do the work and checks on her daily. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a cleaner, kitchen helper, or laundry laborer – jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for all levels of work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council denied Plaintiff's request for review, making the ALJ's decision final.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on three grounds: (1) whether the ALJ properly evaluated Plaintiff's Mental Impairments; (2) whether the ALJ's dismissal of the psychological consultative evaluation is supported by substantial evidence; and (3) whether the ALJ erred in failing to find Plaintiff is able to sustain employment.

The Court determines that the hearing decision must be affirmed in all respects.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.      The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.      The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.      The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.      If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.      If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007)

("In evaluating a disability claim, the Commissioner conducts a five-step sequential

analysis to determine whether (1) the claimant is presently working; (2) the claimant

has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden

of establishing a disability through the first four steps of the analysis; on the fifth, the

burden shifts to the Commissioner to show that there is other substantial work in the

national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Put another way, Plaintiff "must show

that he could and would have adduced evidence that might have altered the result."
*Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Evaluation of Plaintiff's Mental Impairments

Plaintiff first argues that the ALJ erred in failing to evaluate Plaintiff's mental impairments and resulting functional limitations as required by 20 C.F.R. § 416.920a. Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 416.920a(a).

In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See id.* § 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. *See id.*; *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir.2001). The ALJ must then rate the degree of functional limitation resulting from the impairments. *See* 20 C.F.R. § 416.920a(b)(2). The regulations set forth four broad functional areas for which the ALJ must rate the degree of the claimant's limitation: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. *See* 20 C.F.R. § 20 C.F.R. § 416.920a(c)(3). These four functional areas are known as the "paragraph B" criteria. The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 416.920a(c)(4). The degree of the

fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *See id.*

The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. *See* 20 C.F.R. § 416.920a(e)(4). After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. *See* 20 C.F.R. § 416.920a(d). If the degree of functional loss is either "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. *See* 20 C.F.R. § 416.920a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. *See* 20 C.F.R. § 416.920a(d)(2).[1] To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. *See* 20 C.F.R. § 416.920a(d)(2). If the impairment is severe but does not meet

_____

[1] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. *See* 20 C.F.R. § 416.920a(d)(3); *see Boyd*, 239 F.3d at 705.

Plaintiff argues that, "[a]lthough the ALJ noted the four functional areas, the ALJ failed to include a specific finding as to the degree of limitation in each of the areas. Instead the ALJ finds Plaintiff to have 'a mild to moderate degree of limitations in the B-criteria with no episodes of extended duration.'" Dkt. No. 8 at 4. The Court is unclear as to the basis of Plaintiff's complaint. Plaintiff cites no case law, nor does Plaintiff explain how the ALJ's analysis was deficient.

Indeed, the ALJ properly made a specific finding as to each of the four areas of functional limitations. If Plaintiff's complaint is that the ALJ was not permitted to use the scale "mild to moderate" and rather had to choose one point on the scale – that is, either mild *or* moderate – that error is clearly harmless, as the ALJ determined that the impairments were severe and went on to perform further analysis, specifically an RFC analysis that Plaintiff would not have been entitled to if the functional limitations were deemed "mild" but was entitled to if they were deemed "moderate." *See* Dkt. No. 19-2 at 16. In fact, the ALJ specifically noted that he performed a "more detailed assessment" when discussing Steps 4 and 5 that "reflects the degree of limitation I have found in the 'paragraph B' mental functional analyses." *Id.* As for the fourth functional area, the ALJ found that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." *Id.*

Thus, the ALJ met the requirements of 20 C.F.R. § 416.920a. *See Westover v. Astrue*, No. 4:11-cv-816-Y, 2012 WL 6553102, at *8 (N.D. Tex. Nov. 16, 2012), *rec. adopted*, 2012 WL 6553829 (N.D. Tex. Dec 13, 2012). Plaintiff's argument lacks merit.

<u>The Psychiatric Consulatation</u>

Plaintiff next argues that the ALJ's finding that Plaintiff's psychological consultative evaluation should not be given weight is not supported by substantial evidence.

Although more weight is generally given to the opinion of an examining physician, even though she did not treat the claimant, than to a non-examining physician's opinion, *see* 20 C.F.R. § 404.1527(d)(1)*,* consulting examiners are not entitled to the special deference afforded to treating physicians, *see Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008). Moreover, subject to specific requirements for the analysis and explanation required for rejecting or discounting certain physicians' opinions in some circumstances, an ALJ is free to reject all or portions of <u>any</u> physician's opinion when the overall evidence supports a contrary conclusion. *See Cromwell v. Astrue*, 4:10-cv-61-Y, 2011 WL 666282, at *7 (N.D. Tex. Jan. 21, 2011) (*citing Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)), *rec. adopted* 2011 WL 666279 (N.D. Tex. Feb. 14, 2011).

Plaintiff describes in detail observations from the clinical interview/mental status exam of Dr. Linda S. Ludden (the "Psychiatric Consulatation"). *See* 23-1 at 5-7. At the Psychiatric Consultation, Plaintiff was described as "anxious." Dkt. No. 19-2 at 17. Plaintiff informed Dr. Ludden that she has three ages – the adult version of herself,

a seven-year-old version of herself, and a fifteen-year-old version of herself. *See id.* Plaintiff also stated that she had one "alter personality" named Renee, who is angry and mutilating and who previously used alcohol and marijuana but went through recovery. *Id.* Dr. Ludden concluded that Plaintiff's prognosis was "very poor" and assigned her a Global Assessment of Functioning ("GAF") score of 25. Dkt. No. 19-8 at 354. Dr. Ludden's examination of Plaintiff took place on January 6, 2010. *See id.* at 349.

On January 19, 2010, Plaintiff submitted to a physical examination by Dr. Hassan Farooq. The purpose of Dr. Farooq's examination was to determine whether Plaintiff had a disability due to hand problems. Dr. Farooq determined that any problems with Plaintiff's hands were minimal. *See* Dkt. No. 19-8 at 358. Dr. Farooq also noted that Plaintiff was "cooperative with exam" and "[a]lert and oriented without obvious deficits." *Id.* at 360. Dr. Farooq noted that Plaintiff was not on any medication. *See id.* at 359.

Because of the apparent differences in Plaintiff's demeanor between her Psychiatric Consultation and her physical consultative exam, a Texas Disability Determination Service Disability Specialist referred the claim, on suspicion of fraud, to the Dallas Cooperative Disability Investigations (CDI) Unit. *See* Dkt. No. 19-10 at 589. On March 31, 2010, two Dallas County Sheriff's Department Detectives interviewed Plaintiff. Plaintiff was able to recall and recite from memory her Social Security number, date of birth, place of birth, and telephone number. *See id.* at 591. Plaintiff stated that she "spends her day taking care of her mother and taking care of

the residence. She occasionally helps with the upkeep of the yard at the residence. She takes her grandchildren to the local park a few times a week." *Id.* Plaintiff stated that she shops for groceries at the local grocery stores about twice per week, paying with cash. *See id.* The detectives observed Plaintiff to "be pleasant and cooperative. She maintained eye contact while answering questions, and had no apparent difficulty maintaining her focus and concentration. She was timely with responses, and answered questions independently and appropriately." *Id.* at 592.

The ALJ found that Plaintiff's "mental presentation at her physical consultative examination and her responses to the CDI investigators correctly assess her present mental state." Dkt. No. 19-2 at 18. The ALJ further noted that Plaintiff had only two visits for mental health treatment (to Mental Health Mental Retardation ["MHMR"]) as of the time of the hearing (October 28, 2010) since her release from prison in October 2009. For those reasons, the ALJ decided not to give any weight to the Psychiatric Consultation. *See id.* The ALJ noted that, other than at the Psychiatric Consultation, the record contained no symptoms or diagnoses of multiple personalities. *See id.* The ALJ stated that he found Plaintiff's answers to the criminal investigation, "where false statements would have had significant consequences," to be "the most probative evidence." *Id.*

The ALJ further noted that the State Agency did not rely on the Psychiatric Consultation, recognizing Plaintiff's inconsistencies. *See id.* The State Agency report on which the ALJ relies, the "Psychiatric Review Technique," found that Plaintiff's impairments were "not severe." Dkt. No. 19-8 at 363. While the Psychiatric Review

Technique found that Plaintiff suffered from depressive disorder, borderline personality disorder, and polysubstance dependence, Plaintiff's degree of limitation for the first three functional areas in the Paragraph B criteria was "mild," and her degree of limitation for the fourth area was "none." *See id.* at 363-375. The Psychiatric Review Technique states that, "[b]ased on the evidence in file, claimant was clearly feigning insanity at the 1/10 psyche ce." *Id.* at 375.

The ALJ also relied on the testimony of the medical expert, who opined that Plaintiff could turn her dramatic mental presentations "on and off." *Id.* The ALJ noted that the medical expert pointed out that the extensive records from the Texas Department of Corrections, during Plaintiff's incarceration, demonstrated Plaintiff's mental state to be "within normal limits" during that time period. *Id.* The ALJ observed that "[t]here was no diagnosis and no apparent need for mental health treatment in December, 2008, when the claimant's GAF was 55." *Id.*

Finally, the ALJ referenced the medical expert's testimony that Plaintiff's records from MHMR show Plaintiff was diagnosed with schizoaffective disorder and borderline intellectual functioning with no formal testing and based on her limited education. *See id.*

Plaintiff asserts that the ALJ "contradicts himself in finding that although Plaintiff's disorders are severe, she was feigning insanity at the psychological consultative examination and her behavior there must be dismissed." Dkt. No. 23-1 at 9. The Court disagrees. Substantial evidence supports the ALJ's finding that the record contradicted the conclusions in the Psychiatric Consultation. The ALJ's finding that

Plaintiff suffers from severe impairments does not mean that she is disabled or that the ALJ was required to accept the conclusions from the Psychiatric Consultation. *See* 20 C.F.R. § 416.920a(d). The ALJ provided a reasonable explanation for giving no weight to the Psychiatric Consultation, and the ALJ did not err by rejecting it. *See Lopez v. Astrue*, 4:11-cv-343-Y, 2012 WL 2148732, at *9 (N.D. Tex. May 22, 2012) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)), *rec. adopted* 2012 WL 214977 (N.D. Tex. June 13, 2012).

Finally, Plaintiff urges that certain new evidence not presented to the ALJ – Plaintiff's treatment records from Dallas Metrocare for treatment provided after the hearing – do not support the ALJ's finding that Plaintiff's behavior at the Psychiatric Consultation was fraudulent. "When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). However, a remand is justified only if the claimant makes "a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Id.* Evidence is not material for purposes of a remand unless it "relates to the time period for which disability benefits were denied." *Id.* Furthermore, evidence is not material if it relates "to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought." *Id.* at 555 n.14.

Plaintiff's new evidence is not material, because there is not a reasonable probability that the new evidence would change the outcome of the decision. The ALJ

specifically noted that Plaintiff had sought treatment only twice in the year following her release from prison. *See* Dkt. No. 19-2 at 18. The fact that Plaintiff, after the hearing, then started a treatment regime does nothing to disturb the ALJ's inference that Plaintiff was not credible because, while in the midst of her assertions of virtual helplessness from mental disorders, she sought treatment only twice over approximately a year-long period between October 2009 and October 2010. Moreover, if Plaintiff's condition subsequently deteriorated, new evidence of that deterioration is not material. *See Ripley*, 67 F.3d at 555.

Finally, the most recent treatment records from Metrocare show that Plaintiff reported that "she sleeps and eats well and that the meds she's taking 'work most of the time.'" Dkt. No. 19-10 at 611 (as of June 22, 2011). Plaintiff subsequently reported that "her meds are fine" and that she does not want any changes, "just refill." *Id.* at 613 (as of July 19, 2011).

For all of the reasons identified above, Plaintiff's new evidence is not material and does not warrant remand.

<u>Plaintiff's Ability to Maintain Employment</u>

Plaintiff argues that the ALJ erred in not determining whether she retains the ability to maintain employment under *Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002) because her symptoms "wax and wane" in severity. *Id.*

In *Watson*, the Fifth Circuit held that the ALJ erred by failing to determine whether the plaintiff was capable not only of obtaining but also maintaining employment. 288 F.3d at 218. The RFC rules (20 C.F.R. § 404.1545) and a Social

Security Ruling (SSR 96–8p (1996)) both make clear that the RFC is a measure of the plaintiff's capacity to perform work "on a regular and continuing basis," and in most cases the ability to maintain employment is adequately taken into account in the RFC determination. *See, e.g.*, *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). The Fifth Circuit has clearly rejected the idea that an ALJ must in all cases make a separate finding that the claimant has the ability to maintain employment. *Frank*, 326 F.3d at 619. Any such required extra finding must be predicated on the claimant having an impairment that waxes and wanes in its manifestation of disabling symptoms. *See id.*; *Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003).

The Court of Appeals in *Frank* explained that "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619. *Frank* gave an example of evidence that might necessitate a separate finding of a claimant's ability to maintain employment: "For example, if [the Plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id*.

In *Perez*, the Fifth Circuit also found that the plaintiff's evidence of "waxing and waning" disability did not rise to the level of impairment required by *Watson*. 415 F.3d at 465. The plaintiff claimed his "pain would vary in intensity or 'wax and wane' between injections;" he had "good days and bad days;" and his expert witness testified

that "he knew Mr. Perez and it was his professional opinion that Mr. Perez would not be able to work a 30 hour week on a reliable basis." *Id.* at 465-66. The Court of Appeals found that such assertions were not sufficient to bring Perez's case within the scope of *Frank. Id.* at 465. The panel further remarked that "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.*

The Fifth Circuit held in *Dunbar* that, "absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC [residual functional capacity]," a separate finding regarding an ability to maintain employment is not required. 330 F.3d at 671.

Plaintiff has not identified or demonstrated the existence of "waxing and waning" symptoms that would satisfy the *Frank* and *Watson* standard, except to assert that Plaintiff's mental disorder, by its nature, waxes and wanes in severity. *See* Dkt. No. 23-1 at 13. The record does not suggest that Plaintiff's symptoms wax and wane but rather, as the medical expert testified, that the Plaintiff could turn her dramatic mental presentations "on and off." Dkt. No. 19-2 at 18. Moreover, the undersigned rejects Plaintiff's blanket statement that "mental impairments, by their nature, are such 'that the claimant is unable to remain employed for any significant period of time.'" Dkt. No. 23-1 at 12 (quoting *Perez*, 415 F.3d at 465 (citing *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986)). The undersigned does not read the cited decisions

"as standing for the proposition that a claimant with a mental impairment automatically is unable to maintain employment, and [Plaintff] cites no case law supporting such an interpretation." *Crainey v. Astrue*, No. 4:11-cv-613-A*,* 2012 WL 5846406, at *7 (N.D. Tex. Nov. 1,2012), *rec. adopted* 2012 WL 5860324 (N.D. Tex. Nov. 19, 2012).

In addition, like the plaintiff in *Frank*, Plaintiff has only contended at the hearing and in her application that she could not work at all. As explained in *Frank*, Plaintiff's reliance on *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), is therefore misplaced, because *Singletary* "did not require, as [Plaintiff] seems to suggest, separate findings on 'obtaining' and 'maintaining' a job in every case, even cases in which the applicant does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work." *Frank*, 326 F.3d at 621. The evidence required by *Dunbar* – that the plaintiff could start working but could not continue or that the ALJ did not know that working on a regular and continuing basis is part of the RFC – is completely lacking here. *Accord Patterson v. Astrue*, 324 F. App'x 419, 422 (5th Cir. 2009); *McPeters v. Astrue*, No. 1:07-cv-112-C, 2008 WL 4414542, at *13 (N.D. Tex. Sept. 30, 2008). Rather, the ALJ specifically noted that the RFC encompassed an individual's "ability to do physical and mental work activities on a <u>sustained basis</u>." Dkt. No. 19-2 at 14 (emphasis added).

The ALJ properly determined Plaintiff's RFC and did not err by omitting a *Watson* review.

## Conclusion

The hearing decision is affirmed in all respects.

DATED: May 6, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE